Enos, Appellant, *v.* Enos.

Argued December 10, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Allen Grant,* for appellant.

*Sabato M. Bendiner,* for appellee.

OPINION BY KELLER, P. J., January 27, 1944:

The master in this divorce action, filed May 1, 1940, recommended that a divorce be granted the husband libellant on the grounds of (1) personal indignities and (2) wilful and malicious desertion. The court sustained exceptions to his report and dismissed the libel. The libellant appealed. ·

We have read the more than 1300 pages of testimony in the record and are in accord with the action of the court below.

The notes of testimony are encumbered with much unnecessary repetition and hearsay matter. They furnish small ground for a divorce because of indignities to the person and none whatever for desertion.

(1) Considering the latter ground first, the record shows that in 1930 the parties were living in Sharon Hill, Delaware County. They had moved there in 1929 after they had been compelled to leave their home in Philadelphia because of the foreclosure of a mortgage upon it. The house in Sharon Hill was also encumbered by two mortgages, a straight first mortgage, followed by a building and loan association second mortgage, which called for monthly payments covering dues, interest, etc. The libellant made none of these payments and the building and loan association foreclosed its mortgage early in 1930, and bought in the property at sheriff's sale. Libellant made ineffectual efforts to lease the property, and several months after the sheriff's sale had been confirmed, the purchaser brought proceedings (Common Pleas Delaware County, No. 1452 December Term 1929), under the Act of April 20, 1905, P. L. 239, for the purpose of securing possession of the premises, and on August 2, 1930 served a citation, issued by the court, on the respondent commanding the persons in possession to appear and show cause why possession of the premises should not be delivered to the purchaser at sheriff's sale. The citation was returnable on August 17, 1930, at which time, as they had no ground of defense, judgment would be entered and she and her husband would be evicted. The gas and electricity had been turned off for weeks; the water had been turned off several times but happened to be on then; her husband bought coal by the *bushel* only, and spent most of his time away from the house. Instead of her customary allowance of $20 a week to run the home for her husband, herself and their small boy, he had given her irregular sums, amounting to only $240.38 from January 1 to August 15, an average of about $7.50 per week. He had been unable, during the months intervening between the sheriff's sale and the issuing of the citation, to make arrangements with the pur-

chaser to lease the property, and she testified—and we believe her—that he told her to have a storage company remove her furniture by the 15th of August. She did this, and was justified in doing it. She was living in a house no longer owned by her husband, on mere sufferance, and would have been evicted within a few days if she had not gone when she did. She suggested that they go to his mother's home to live, but he told her that he would go there but she could not go with him. After they left the Sharon Hill house, he made no provision for a home for her and never once asked her to live with him. Four months later he brought an action of divorce on the grounds of cruel and barbarous treatment and indignities to the person (5472 December Term 1930) which he never pushed; and seven years later be brought a second action on the same grounds (84 December Term 1937) in which he made no charge of desertion. This second action was non-prossed on April 7, 1938.

There is not the slightest element of a wilful and malicious desertion in this case, (*Mitchell v. Mitchell,* 142 Pa. Superior Ct. 599, 601, 602, 16 A. 2d 725; *Francis v. Francis,* 152 Pa. Superior Ct. 199, 31 A. 2d 607) and we are satisfied that if libellant had stated the facts correctly and truthfully to his present counsel it would not have been laid as ground for divorce in this action.

(2) Coming then to the charge of indignities to the person, most of the testimony relates to trivial matters, that by no stretch of the imagination can be called indignities. When living at 1316 South 56th Street, their residence just before going to Sharon Hill, he moved his office—he was a plumbing contractor—into the basement of his home. They kept no maid and the wife cleaned the office, answered telephone calls if the bookkeeper-clerk was away on business, and looked after the office generally in his absence. Libellant averred

that for five or six months—that is, until the mortgage was foreclosed—about twice a week the respondent, on going out, would leave their four year old son at home and he would play around the office as well as in the playroom back of it. What of it? It may have interfered slightly with the bookkeeper's duties, but it was no indignity to the person of the libellant. No complaint about it was made to the respondent.

He testified that his wife told him that the sterling flat silver, some of which had been given them as wedding presents and the balance of which they had purchased, was not in the closet where they usually kept it and she thought it was stolen. He said he found it where it was accustomed to be kept and took it down to a safe deposit box at his bank. He admitted that he subsequently 'hocked it for $25', to use his own expression, and lost it through failure to redeem the pledge. To call such a circumstance an act of indignity on her part is just silly. Her version—and again we believe it—was that the silver was missing and when she told her husband about it, he said he had put it in a safe deposit box in bank—with the result above-mentioned.

She refused to sign a deed which her husband had taken, subject to two mortgages, in payment of some plumbing contract. But she had not joined in the agreement of sale. The wife's joinder in her husband's deed, conveying her rights in his real estate, must be *voluntary,* and her refusal to join in his deed was not an indignity. Whatever loss, if any, resulted from this refusal was due primarily to his custom of taking houses, encumbered by mortgages, practically to their full value, in payment of his plumbing contracts, so that unless he could sell the houses promptly at a good price he was bound to suffer a loss. He said that at one time he had judgments of over $100,000 against him, entered on bonds accompanying his mortgages.

His innuendoes or accusations against the chastity

of some of his wife's women friends, who were members of her card club, were nothing but unsupported hearsay statements on his part and should have been wholly disregarded. They were, in our opinion, only afterthoughts, drummed up to support this action. They involved no indignity to him.

His testimony as a whole is so indefinite, unreliable and so full of misstatements, subsequently discovered or admitted, that we place little reliance upon it where it conflicts with the respondent's evidence, which we regard as more probable, reliable and truthful.

These inaccuracies and misstatements on his part as respects trivial, immaterial matters throw discredit on his testimony with reference to more important items.

The unhappiness of their home life seems to have dated from October 1925, when she discovered that he was entertaining at the Brookline Country Club for a woman whom she did not know and had never heard of. His explanation did not satisfy her then, nor does it ring true to us. His testimony before Judge WALSH of the Municipal Court (p. 638) "I admit I made a foolish move. I picked up a woman and I came back to my wife and she checked up on me and I owned up to it, but nothing happened since then", seems more credible to us. Possibly the wife would have overlooked or forgiven it, if he had been truthful to her. But his lack of candor then made her suspicious; and he seems to have given her ground for her subsequent suspicions.

In our opinion, whatever *indignities* she "offered his person" after that—and they were not many or great— were provoked by his actions and were the natural consequences of his own conduct, and did not warrant a divorce.

The decree is affirmed at the costs of the appellant.